UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| JOSEPH GUGLIELMO, | : | Case No. 3:17-cv-6 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| MONTGOMERY COUNTY, OHIO and MONTGOMERY COUNTY BOARD OF COMMISSIONERS, *et al.*, | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATION[1]

## I. **Introduction**

Plaintiff Joseph Guglielmo brings this action against Defendants Montgomery County, Ohio and Montgomery County Board of Commissioners, Phil Plummer, Matthew Snyder, Zachary Zink, Matthew Sears, David Cohn, Brandon Ort, Bradley (aka Benjamin) Cooper (Montgomery County Defendants) alleging they deprived him "of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from excessive force, the right to be protected from excessive force, and the right to receive appropriate medical care." (Doc. #7, *PageID* #71). Plaintiff does not name as parties or assert claims against Montgomery County Jail's medical provider, NaphCare, Inc., or any NaphCare employees.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

Montgomery County Defendants (aka Third-Party Plaintiffs) subsequently filed a Third Party Complaint (Doc. #17) alleging a violation of 42 U.S.C. § 1983 against Third Party Defendants NaphCare, Inc., Greg Mills, LN, Jack Saunders, EMT, and Brenda Garrett Ellis, M.D. (NaphCare Defendants) "for deliberate indifference to and callous and/or reckless disregard for the rights and critical medical and mental health needs of Plaintiff, Joseph Guglielmo …." (Doc. #17, *PageID* #123).

This case is presently before the Court upon NaphCare Defendants' Motion to Dismiss Third Party Complaint (Doc. #30) and Supplemental Memorandum (Doc. #33), Third Party Plaintiffs' Memorandum in Opposition (Doc. #34), NaphCare Defendants' Reply (Doc. #44), and the record as a whole.

## II. Background

Montgomery County Defendants' Third Party Complaint includes a statement of facts that varies somewhat from the statement of facts in Plaintiff's First Amended Complaint. However, they *generally* tell the same story.

That story begins on January 15, 2015, when Dayton Police Officers responded to the Gettysburg Gateway Shelter for Men for a "disorderly subject complaint" regarding Plaintiff. (Doc. #7, *PageID* #66); (Doc. #17, *PageID* #120). Plaintiff "had become agitated" with shelter employees, and "[a]s a result, an argument and struggle ensued between [Plaintiff] and the shelter security guard." (Doc. #7, *PageID* #66). Plaintiff also struggled with the officers "when they attempted to arrest him." *Id*.

According to Montgomery County Defendants, as a result of one or both of these struggles, Plaintiff "suffered visible injuries to [his] head and face …." (Doc. #17,

*PageID* #120).  These "injuries necessitated that Plaintiff be taken to Grandview Medical Hospital for evaluation …." *Id.*  After discharge from the hospital, Plaintiff was booked into the Montgomery County Jail in the early morning of January 15, 2015. *Id.*; (Doc. #7, *PageID* #66).

Montgomery County Defendants allege Plaintiff "exhibited aggressive and agitated behavior in D-Pod, which necessitated Plaintiff being moved to a different area of the Montgomery County Jail referred to as Transport Staging." (Doc. #17, *PageID* #120; *see* Doc #7, *PageID* #66).  Despite the move, Plaintiff "continued to exhibit aggressive and disruptive behavior in Cell 114, which included throwing his own head and body into the cell door." (Doc. #17, *PageID* #121).

Plaintiff alleges that after the move to Transport Staging, he "began banging on the cell door demanding medication." (Doc. #7, *PageID* #66).  He continued banging on the door "while Defendant Matthew Snyder was trying to conduct roll call." *Id.* at 67.

The parties agree that, on January 15, 2015 at 11:36 p.m., Defendant Snyder entered Plaintiff's cell. *Id.*; (Doc. #17, *PageID* #121).  What happened thereafter is the subject of the present case.

Montgomery County Defendants allege, "Plaintiff became upset and physically aggressive, pulling Sergeant Snyder by his forearms and towards Plaintiff." (Doc. #17, *PageID* #121).  Defendant Snyder ordered Plaintiff to release him and when he failed to comply, "Sergeant Snyder was required to use reasonable force against Plaintiff …." *Id.* According to Montgomery County Defendants,

3

> Following the incident, Sergeant Snyder immediately spoke with NaphCare Nurse Greg Mills and advised Nurse Mills that a use of force occurred involving Plaintiff []. Sergeant Snyder requested that Nurse Mills evaluate Plaintiff [] for injuries and provide necessary and appropriate medical care, if needed. [Nurse] Mills checked Plaintiff [] and provided Plaintiff an ice pack for swelling to his head and face. [He] suggested that Plaintiff [] be moved to a cell in Post Book so that Plaintiff could be more closely monitored.

*Id.* at 121-22 (paragraph numbers omitted). Plaintiff was moved to a new cell where corrections officers and NaphCare Medic Jack Saunders "observed and checked on [him] multiple times." *Id.* at 122. "Plaintiff [] was found unresponsive during one such check and [Medic] Saunders was requested to evaluate Plaintiff …." *Id*. At that time, Nurse Mills and Medic Saunders contacted Dayton Fire EMS to have Plaintiff transported to Miami Valley Hospital. *Id*.

In contrast, Plaintiff alleges, "Without justification, and purely to teach [Plaintiff] a lesson, … "Defendants Snyder, Sears, Zink, and Ort stepped inside his cell. Defendants Cohn and Cooper remained outside of the cell …. Defendant Snyder beat [Plaintiff] repeatedly and threw him against the concrete wall. [] Defendant Snyder delivered several closed-fist strikes to [Plaintiff's] head, eye area, and abdomen." (Doc. #7, *PageID* #67).

According to Plaintiff, despite severe injuries, "[Montgomery County] Defendants denied him proper medical care for over an hour." *Id*. "Nurse Gregory Mills was eventually instructed to give [Plaintiff] ice packs …." *Id*. At a later point, Defendants Cohn and Zink found Plaintiff unconscious and unresponsive, and Cohn called for medical care. *Id.* at 69. Medic Saunders and Nurse Mills were not able to revive

Plaintiff, and he was taken to Miami Valley Hospital by ambulance. *Id.* At the hospital, he underwent brain surgery. *Id.* Plaintiff alleges as a result of Montgomery County Defendants' actions, he "suffered serious injuries to his neck and head. He suffered from a hematoma, was in a coma for several weeks, and is now cognitively disabled and wheelchair bound." *Id.*

### III. Standards of Review

Federal Rule of Civil Procedure 12(b)(1) allows for motions asserting lack of subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust,* 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted). A facial attack challenges the sufficiency of the complaint's assertion of subject-matter jurisdiction. *Id.* When countering a facial attack, "the plaintiff's burden to prove subject matter jurisdiction is not onerous." *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996). The allegations in the complaint are taken as true, and "[i]f those allegations establish federal claims, jurisdiction exists." *Gentek,* 491 F.3d at 330. "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. When a factual attack ... raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th

Cir. 1996). Under Federal Rule of Civil Procedure 8, "A pleading that states a claim for relief must contain: … a short and plain statement of the claim showing that the pleader is entitled to relief; and … a demand for the relief sought …." This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (citations omitted); *see also Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) ("a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'") (quoting in part *Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) ("when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must 'construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.'") (quoting *Laborers' Local 265 Pension Fund v. iShares Trust,* 769 F.3d 399, 403 (6th Cir. 2014)).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001)); *see also Greensberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted) ("Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings."). However, under Federal Rule of Civil Procedure 12(d), "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

## IV. Discussion

NaphCare Defendants, in their Motion to Dismiss Montgomery County Defendants' Third-Party Complaint and Supplemental Memorandum, provide three reasons—pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)—why Montgomery County Defendants' Third-Party Complaint should be dismissed. First, they contend Montgomery County Defendants "lack standing to pursue this lawsuit because they have suffered no harm as a result of the actions of NaphCare Defendants." (Doc. #30, *PageID* #149). Second, if they do have standing, "this claim should be dismissed because the Third Party Complaint lacks factual allegations creating a cause of action against any of the NaphCare Defendants." *Id.* at 149-50. Third, NaphCare

Defendants assert that the "Third Party Complaint must also be dismissed because it is time barred under the two year statute of limitations for 42 U.S.C. § 1983 claims." (Doc. #33, *PageID* #172).

Montgomery County Defendants, however, assert that they "are not pursuing a 42 U.S.C. § 1983 action on behalf of Plaintiff …." (Doc. #34, *PageID* #178). Instead, they are "seeking indemnification and/or contribution from the NaphCare Defendants for the 42 U.S.C. § 1983 allegations raised in Plaintiff's First Amended Complaint." *Id.* They explain, "Many of the claims and factual allegations raised by the Plaintiff are related to the medical care or services Plaintiff allegedly failed to receive in the Montgomery County Jail. Accordingly, NaphCare, Inc., as the contracted for medical care provider in the Montgomery County Jail is a proper party to this lawsuit and owes a contractual duty to the Montgomery County Defendants …." *Id.* at 178-79 (citing Doc. #7).

It does appear from Montgomery County Defendants' Third Party Complaint—as indicated by NaphCare Defendants—that Montgomery County Defendants are attempting to assert a cause of action against NaphCare Defendants under 42 U.S.C. § 1983 on Plaintiff's behalf. For example, the first (and only) cause of action is titled "Violation of 42 U.S.C. § 1983 against [NaphCare Defendants] for Deliberate Indifference to Serious Medical Needs in Violation of Fourteenth Amendment"; and they allege, "This Claim for Relief is brought against … [NaphCare Defendants], pursuant to 42 U.S.C. § 1983 for deliberate indifference to and callous and/or reckless disregard for the rights and critical medical and mental health needs of Plaintiff …." (Doc. #17, *PageID* #123). However, given Montgomery County Defendants' insistence that they are not attempting to assert a

8

§ 1983 claim on behalf of Plaintiff, the Court will not address NaphCare Defendants' contention that Montgomery County Defendants lack standing.

It is, however, less clear whether Montgomery County Defendants seek indemnification and/or contribution under 42 U.S.C. § 1983 or under the contract between Montgomery County Defendants and NaphCare Defendants. For example, in their prayer for relief, Montgomery County Defendants "seek judgment against the Third-Party NaphCare Defendants for indemnification and/or contribution for any and all damages which may be awarded in favor of Plaintiff … as a direct and proximate result of the Third-Party Defendant's [sic] negligence, and deliberate indifference to a serious medical need …." *Id.* at 124. Although Montgomery County Defendants assert they "are not required to set forth a 42 U.S.C. § 1983 claim against the NaphCare Defendants nor are they attempting to do so[,]" Doc. #34, *PageID* #182, they also state they "are … seeking indemnification and/or contribution from the NaphCare Defendants for the 42 U.S.C. § 1983 allegations raised in Plaintiff's First Amended Complaint." *Id.* at 178.

Accordingly, this Court will address indemnification and/or contribution under both.

*Contribution/Indemnification under 42 U.S.C. § 1983*

The Sixth Circuit has yet to address whether there is a right to indemnification or contribution under 42 U.S.C. § 1983. *See Coleman v. Casey Cnty. Bd. of Educ.,* 686 F.2d 428, 430, n.1 (6th Cir. 1982) ("Thus, the Court need not decide whether a right to contribution exists under §§ 1981, 1983 …."). However, many courts that have considered it have found no right to indemnification or contribution exists under § 1983.

9

*See Roell v. Hamilton Cnty.,* No. 1:14-cv-637, 2015 WL 3605345, at *4 (S.D. Ohio June 8, 2015) (Beckwith, D.J.) ("[T]he Court concludes that § 1983 does not provide a right of contribution to a defendant against a third-party."); *Doe v. Williamsburg Indep. Sch. Dist.,* No. 6:15-cv-75, 2016 WL 1735850, at *3 (E.D. Ken. May 2, 2016) ("the prevailing view is that no right to indemnification or contribution exists under § 1983.") (citing *Allen v. City of Los Angeles*, 92 F.3d 842, 845 n.1 (9th Cir. 1996); *Harris v. Angelina Cnty.*, 31 F.3d 331, 338 n.9 (5th Cir. 1994); *Frantz v. City of Pontiac*, 432 F.Supp.2d 717, 722 (E.D. Mich. 2006); *Hughes v. Adams*, No. 5:06-cv-p176-R, 2007 WL 3306076 (W.D. Ky. Nov. 6, 2007); *Hart v. City of Williamsburg*, No. 6:04-321-DCR, 2005 WL 1676894, at *3 (E.D. Ky. July 16, 2005)).

Although the Supreme Court has not addressed whether contribution is available under § 1983, in *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.ed.2d 750 (1981), the Court addressed whether an employer has a right to contribution from unions under the Equal Pay Act or Title VII. In doing so, the Court provided a framework for determining "whether Congress intended to create the private remedy—for example, a right to contribution …." *Id.* at 91 (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981)).

The Court explained, "Even though Congress did not expressly create a contribution remedy, if its intent to do so may fairly be inferred from either or both statutes, an implied cause of action for contribution could be recognized …." *Id.* at 90.

This, according to the Court, is a question of "statutory construction" and there are several factors to consider—beginning with the language of the statute. *Id.* at 91-92 (citation omitted). The Court observed that "[n]either the Equal Pay Act or Title VII expressly creates a right to contribution in favor of employers." This absence is a significant indication that no right should be implied. *Id.* But, it is "not dispositive if, among other things, the language of the statutes indicates that they were enacted for the special benefit of a class of which petitioner is a member." *Id.* The Court found that the Equal Pay Act and Title VII "are expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees." *Id.* at 92.

The Court then examined the structure of the statutes, concluding, "The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." *Id.* at 93-94. Finally, the Court looked to the legislative history of the statutes. *Id.* at 94. There was no mention of contribution in the legislative history of the Equal Pay Act or Title VII. Accordingly, the Court concluded that there was no implied right to contribution under either statute. *Id.* at 94-95.

A review of these factors leads this Court to the same conclusion. Section 1983 does not expressly provide for a right of contribution. And, "persons acting under the color of state law are not a member of the class § 1983 was intended to benefit. Section 1983, rather, was intended to benefit persons who suffer a deprivation of their constitutional rights at the hands of persons acting under color of state law." *Roell,* 2015

WL 3605345, at *4 (citing *Robertson v. Wegmann,* 436 U.S. 584, 590-91, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) ("The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.")). Neither party has suggested that the legislative history indicates Congress intended to provide a right of contribution. *Id.* at *4. Taken together, these factors indicate § 1983 does not provide Defendants with an implied right of contribution.

Accordingly, Montgomery County "Defendants' claims for indemnification and/or contribution, to the extent they arise out of their potential § 1983 liability, are impermissible inasmuch as there is no statutory right or common law right to contribution and/or indemnity under 42 U.S.C. § 1983." *See Hart*, 2005 WL 1676894, at *3.

The NaphCare Defendants, in their supplemental memorandum, also assert that Montgomery County Defendants' Third Party Complaint must be dismissed because it is time barred under the two-year statute of limitations. (Doc. #33, *PageID* #172).

The statute of limitations for 42 U.S.C. § 1983 actions is based on the statute of limitations for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1093, 166 L. Ed. 2d 973 (2007). In Ohio, the statute of limitations is two years. Ohio Rev. Code § 2305.10; *see Cooey v. Strickland,* 479 F.3d 412, 416 (6th Cir. 2007).

Federal law, however, governs the question of when the limitations period begins to run. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Sevier v. Turner,* 742 F.2d 262, 272–273 (6th Cir.1984). "'[T]he statute of limitations

begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990) (quoting *McCune v. City of Grand Rapids,* 842 F.2d 903, 905 (6th Cir. 1988)); (other citation omitted).

In the present case, Montgomery County Defendants knew or had reason to know of NaphCare Defendants alleged deliberate indifference to Plaintiff Guglielmo's serious medical needs on January 15, 2015. Montgomery County Defendants filed their Third Party Complaint on August 11, 2017—two years and almost seven months later. Accordingly, to the extent Montgomery County Defendants' cause of action against NaphCare Defendants is brought under § 1983, it is time barred.

### *Contractual Duty*

Montgomery County Defendants insist that they "are not pursuing a 42 U.S.C. § 1983 action on behalf of Plaintiff Joseph Guglielmo against NaphCare Defendants. Montgomery County Defendants are instead seeking indemnification and/or contribution from the NaphCare Defendants for the 42 U.S.C. § 1983 allegations raised in Plaintiff's First Amended Complaint." (Doc. #34, *PageID* #178). Specifically, Montgomery County Defendants assert, "NaphCare, Inc., as the contracted for medical care provider in the Montgomery County Jail is a proper party to this lawsuit and owes a contractual duty to the Montgomery County Defendants to indemnify and/or contribute to any judgment awarded as to these particular claims." *Id.* at 179.

13

Montgomery County Defendants did not attach a copy of the contract between themselves and NaphCare Defendants …" but included what they describe as the "relevant provision of the contract[.]" *Id.* They also claim that Plaintiff's "allegations related to the medical services provided by NaphCare to the Plaintiff *implicate the contract* between Montgomery County Defendants and NaphCare …." *Id.* at 180 (citing Doc. #7) (emphasis added).

However, there is no mention—or even implication—of a contract between Montgomery County Defendants and NaphCare Defendants in Plaintiff's First Amended Complaint or in Montgomery County Defendants' Third Party Complaint.

"To establish a claim of breach of contract under Ohio law, a plaintiff must demonstrate: *(1) the existence of an enforceable contract;* (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff as a result of the breach." *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 889 (N.D. Ohio 2017) (emphasis added) (citations omitted). According to Montgomery County Defendants, their Third-Party Complaint is based solely on NaphCare Defendants' breach of contract. Because there are no allegations of the existence of a contract in the Third-Party Complaint, it fails to "state a claim for relief that is plausible on its face." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (citation omitted).

Moreover, Montgomery County Defendants assert, "Many of the claims and factual allegations raised by the Plaintiff are related to the medical care or services Plaintiff allegedly failed to receive in the Montgomery County Jail." (Doc. #34, *PageID* #s 178-79). However, that is not entirely accurate. Plaintiff claims Montgomery County

Defendants deprived him of the right to be free from excessive force, the right to be protected from excessive force, and the right to receive appropriate medical care. (Doc. #7, *PageID* #71). But, he does not claim NaphCare Defendants violated his right to receive appropriate medical care. Instead, he claims "Defendants Snyder, Zink, Sears, Cohn, Ort, and Cooper, knowing that [Plaintiff] was suffering injuries to his head, including a swollen eye socket and bleeding nose, and in need of immediate medical treatment, failed to provide medical care and actively prevented [Plaintiff] from receiving timely and appropriate medical care." *Id.* at 69-70. He further explains:

> Defendants denied him proper medical care for over an hour. Nurse Gregory Mills was eventually instructed to give [Plaintiff] ice packs, but was never informed of the severe beating and injuries …. Defendant Snyder never asked Nurse Gregory Mills or any other medical provider to perform an exam or evaluate [Plaintiff] for the injuries he sustained in the beating/assault. Defendant Snyder did inform Major Scott Landis of [Plaintiff's] serious medical need and both deliberately and indifferently permitted no further medical treatment at that time. …

*Id.* at 67-68 (paragraph numbers omitted).

Presumably, any contract between Montgomery County Defendants and NaphCare Defendants would set forth the obligations of the parties, their responsibility to the inmates, and other relevant details concerning the relationship between the parties. But, whether these contractual elements were present and breached is not the subject of the present case.

Under Federal Rule of Civil Procedure 14, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for

15

all or part of the claim against it." "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.,* 512 F.3d 800, 805 (6th Cir. 2008).

But, "[w]hether to allow an impleader lies within the sound discretion of the Court." *Harmon v. Hamilton Cnty,* No. 1:10-CV-911-HJW, 2011 WL 6091786, at *2 (S.D. Ohio Dec. 7, 2011) (Weber, D.J.) (citing *Gen. Elec. Co. v. Irvin,* 274 F.2d 175, 178 (6th Cir. 1960) (affirming district court's denial of leave to file third-party complaint)); *see also* Moore's Federal Practice, Sec. 14.20, citing Advisory Committee Notes. In *Harmon,* the court considered complication, delay, and prejudice to the plaintiff in denying a motion for leave to file a third party complaint after, observing:

> [T]he proposed third-party complaint and related briefs abundantly illustrate that its filing would unduly complicate and further delay the proceedings in this case. Although the Hamilton defendants contend that the Township will not be prejudiced because it was advised of this lawsuit early on, the Court is concerned about the resulting prejudice *to the plaintiffs,* whose case is being delayed by wrangling over the Hamilton defendants' tenuous arguments for potential third-party liability. The Court emphasizes that this is a civil rights action pursuant to 42 U.S.C. § 1983, not a breach of contract or insurance interpleader case. The complication, delay, and prejudice to the plaintiffs are all sufficient here to deny leave to file the third-party complaint.

*Harmon,* 2011 WL 6091786, at *3 (emphasis in original). This same logic applies to the present case. *See S. Macomb Disposal Auth. v. Model Dev., LLC,* No. 11-CV-12715, 2013 WL 607840, at *8 (E.D. Mich. Feb. 19, 2013) ("granting impleader will only serve

16

to complicate and lengthen the resolution of the matter already before the Court and will prevent the parties from receiving a reasonably expeditious adjudication."). Montgomery County Defendants' Third Party Complaint and resulting motions have and will continue to delay the present case. Discovery between the parties has thus far been contentious. And, adding another party will only serve to unduly complicate matters further. Moreover, the addition of NaphCare Defendants will require the parties to delve into the contract between Montgomery County Defendants and NaphCare Defendants and an area of law—specifically, contract law—that they would otherwise have no need to address in the present case.

Accordingly, NaphCare Defendants' Motion to Dismiss should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

NaphCare Defendants' Motion to Dismiss Third Party Complaint (Doc. #30) be GRANTED.

December 4, 2017 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendation within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).