**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH GUGLIELMO, | : | Case No. 3:17-cv-6 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| vs. | : | |
| MONTGOMERY COUNTY, OHIO and THE MONTGOMERY COUNTY BOARD OF COMMISSIONERS, et al., | : | |
| Defendants. | : | |

**MOTION TO BIFURCATE OF DEFENDANTS, MONTGOMERY COUNTY, OHIO AND THE MONTGOMERY COUNTY BOARD OF COMMISSIONERS, SHERRIFF PHIL PLUMMER, MATTHEW SNYDER, ZACHARY ZINK, MATTHEW SEARS, DAVID COHN, BRANDON ORT, AND BENJAMIN COOPER**

Defendants, pursuant to Civil Rule 42(b), move the Court to bifurcate the Plaintiff's *Monell* claim at trial from the Plaintiff's claimed constitutional violations alleged against the individual Defendants. Defendants ask the Court to first hold a trial on the Plaintiff's alleged civil rights violations and state law claims against the individual Defendants. If liability is established in that trial as to the alleged civil rights violations, the Court would then proceed to a second trial on any *Monell* claim that survives summary judgment.

Defendants acknowledge that a motion for summary judgment has been filed (Doc. No. 123) as to certain of the Defendants and the County, which is pending at this time. Should the Court grant the summary judgment motion as to the underlying civil rights claims and/or the *Monell* claims, the Defendants acknowledge that this motion to bifurcate may be moot. The reasons for this Motion are more fully set forth in the following Memorandum.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

*/s/ David E. Williamson*
DAVID E. WILLIAMSON (0071270)
312 Elm Street, Suite 1850
Cincinnati, OH  45202
Phone:  (513) 372-6816
Fax:  (513) 372-6801
Email:  dewilliamson@mdwcg.com

PAUL D. KREPPS (Admitted Pro Hac Vice)
ESTELLE K. MCGRATH (Admitted Pro Hac Vice)
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
Phone: (412) 803-1140
Email:  pdkrepps@mdwcg.com
        ekmcgrath@mdwcg.com

JILLIAN L. DINEHART (0086993)
127 Public Square, Suite 3510
Cleveland, Ohio 44114
Phone:  216.912.3800
Email:  kkhansbrough@mdwcg.com
jldinehart@mdwcg.com

*Counsel for Defendants, Montgomery County, Ohio and the Montgomery County Board of Commissioners, Sherriff Phil Plummer, Matthew Snyder, Zachary Zink, Matthew Sears, David Cohn, Brandon Ort, and Benjamin Cooper*

**MEMORANDUM**

I. **INTRODUCTION**

Defendants seek to bifurcate this action and try the § 1983 civil rights claims against the Defendant individual corrections officers first, and the *Monell* claims against Defendant Montgomery County in a second trial, if any claims still remain.  Bifurcation, with the § 1983 "individual' claims to be tried first, is logical and economical, as before *Monell* liability can be found against the County there first must be a finding that the plaintiff suffered an actual

violation of his constitutional rights by the defendant officers acting under color of state law. *Tinch v. City of Dayton*, 1996 U.S. App. LEXIS 5716, at *12-13 (nonprecedential)(3d. Cir. 1996).

Defendants have satisfied the requirements of Fed.R.C.P. 42(b) which governs the court's ability to award separate trials, having shown that separate trials of these issues would result in "convenience, [] avoid prejudice" and would "expedite and economize" this matter. First, Defendants will be extremely prejudiced should a single trial be held, as the *Monell* evidence is not relevant to the § 1983 claims for excessive force and deliberate indifference against the individual corrections officers. Their liability must be decided by the jury <u>only</u> on the facts of their encounters with Mr. Guglielmo upon which his case is based, and not the *Monell* evidence. Evidence regarding incidents of alleged misconduct by other officers, which is unrelated to the incident in question here, but may be relevant to the County's purported liability for a policy or practice, would be highly prejudicial to the individual corrections officers and undermine and impair their ability to present a defense.

Second, bifurcating the claims will avoid jury confusion as this is already a factually dense case with regard to the individual officers, alone. Including the evidence relevant to the *Monell* claim, will hopelessly confound the jury as to which evidence is relevant as to Mr. Guglielmo's claims against the corrections officers, and which is relevant to the County only. Finally, bifurcation would also promote judicial economy and an expedited resolution, because the need for a second trial addressing the *Monell* claim will be obviated if the jury find no constitutional violation in the first trial. A jury will not have to sit through copious accounts of unrelated incidents irrelevant to the threshold issue of whether a constitutional violation was

proven. Bifurcation is fully supported by decisions from the Sixth Circuit Court of Appeals and the district courts from this district and this circuit.

## II. FACTS AND PROCEDURAL HISTORY

### A. Procedural Background

This case arises out of an incident that began at the Montgomery County Jail ("the Jail") just prior to midnight on January 15, 2015 and into the early morning hours of January 16, 2015. Plaintiff Joseph Guglielmo has sued multiple law enforcement officers of the Montgomery County Sheriff's Office, including Corrections Officers David Cohn ("Cohn"), Zachary Zink ("Zink"), Brandon Ort ("Ort), Benjamin Cooper ("Cooper") and Sheriff's Deputy Matthew Sears ("Sears") and Sergeant Matthew Snyder ("Snyder") (the sole corrections officer alleged to have used excessive force), alleging civil rights claims under 42 Section 1983 for (1) excessive force and (2) deliberate indifference to his serious medical needs. Mr. Guglielmo also sued Sheriff Plummer and the Montgomery County Board of County Commissioners alleging failure to train or supervise the other Defendants, under *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978). A complicated series of events has led to this lawsuit, and Defendants incorporate the facts set forth in their motion for Summary Judgment (Doc. 123) as if fully set forth herein.

Mr. Guglielmo, a 58 year-old homeless veteran was arrested for multiple charges, including assault and resisting arrest at the Gettysburg Gateway Homeless Shelter for Men ("Gateway") in Dayton, Ohio in response to a dispatch on January 15, 2015 at approximately 12:41 a.m. Daugherty Dep., Doc. No. 104, at PID1794-1795; Guglielmo dep,. Doc. No. 103, at PID1743. When the arresting officers noticed an abrasion on his forehead, Mr. Guglielmo was transported to Grandview Hospital, where he advised the attending physican of an assault (at the shelter) and was medically cleared. Daugherty Dep., Doc. No. 104, at PID1806-1807, 18983-1883, 2017. When Mr. Guglielmo arrived at Montgomery County jail on January 15, 2015 at

4

approximately 2:25 a.m. he was uncooperative and agitated. Snyder Dep,. Doc. No. 107, PID20897-2098. Sgt. Snyder first encountered and conversed with Mr. Guglielmo during his booking on the morning of January 15, 2015, approximately twenty-four hours before his use of force. Snyder Dep., Doc. 107, at PID 2096-2098. Mr. Guglielmo was then screened for intake by medical staff NaphCare.

Mr. Guglielmo was originally housed in the general population, but became highly disruptive, agitated and was screaming, banging on the cell and threatening his roommate, which resulted in his removal to the Transport Staging Are, Cell 11, at approximately 10:00 p.m. Sears dep., Doc. No. 109, at PID2491-2492; Whalen Dep, Doc. N. 110, at PID2703-2705, 2709-2711, 2714-2715, 2718. He requested and received a medical review at 10:43 p.m. at which time Samaritan Behavioral Health Employee Tammy Pless observed his depression and agitation and referred the matter to NaphCare doctor Brenda Ellis. Pless Dep., Doc. No. 111, at PID2831-2832. Mr. Guglielmo continued to yell, thrash against and bang his cell door, disrupting the operations of the jail, control room and Snyder's roll call for the beginning of the new shift. Cooper Dep., Doc. No. 112, at PID 2905-2906; Snyder Dep., Doc. No. 107, at PID 2109-2110. Following roll call, Sgt Snyder went to address the disturbance accompanied by Defendant Officers Zink, Ort, Cooper, Sheriff's Deputy Sears, and (non-defendant Kyle Chmiel), all of whom were non-intervening bystanders. *See* Cohn Dep., Doc. No. 114, at PID3125. Sgt. Snyder entered the transport cell in accordance with de-escalation techniques. Snyder Dep., Doc. No. 107, at PID2124-2125. Mr. Guglielmo grabbed Sgt. Snyder and pulled him towards the cement wall of the cell. Snyder Dep., Doc. No. 107, at PID2134. Mr. Guglielmo failed to release Sgt. Snyder, and Sgt. Snyder did nothing more than strike Mr. Guglielmo in the head three times, and once in the stomach, having been left with no other option in this rapidly evolving situation, and

5

of which was in self-defense. Snyder Dep., Doc. No. 107, at PID 2136-2147. The bystander/non-intervening officers – Officers Sears, Ort and Cohn - all substantially testified that the use of force lasted for approximately 20 seconds and happened too quickly to intervene, and there is no doubt that there were only four strikes to Mr. Guglielmo. Sears Dep., Doc No. 109, at 163:4-5 PID 2553; Ort Dep. Doc. No. 113, at PID 3033; Cohn Dep. Doc., No. 114, at PID 3146. Defendant Cooper was in the security control room and not involved. Cooper Dep., Doc. No. 112, at PID 2906-2907.

Mr. Guglielmo continued to bang and NaphCare nurse Greg Mills examined Mr. Guglielmo, determined nothing additional was needed, and he was re-located for better observation. Snyder Dep., Doc. No. 107, at PID2180, 2189-2190-2190. Mr. Guglielmo was escorted to Male Hold Cell 139 in the post-booking area, where Officers Cohn and Zink conducted periodic checks. Snyder Dep., Doc. No. 107, at PID 2194; Zink Dep., Doc. No. 115, at PID3343; Cohn Dep., Doc. No. 114, PID 3186. At one check Guglielmo's feet were twitching and he was checked by medic Jack Saunders, but told them to leave him alone. Snyder Dep., Doc. No. 107, at PID2194-2195; Saunders Dep, Doc. No. 108, at PID2355. Within 10 minutes Officers Zink and Cohn found him unresponsive, additional medical help was requested and Mr. Guglielmo was transported to Miami Valley Hospital. Cohn Dep., Doc. No. 114, at PID 3168; Saunders Dep, Doc. No. 108, at PID 2357-2358; Traylor Dep, Doc. No. 106, at PID 2021, 2019.

The County referred this matter to the Inspectional Services Unit for an investigation of the use of force and the investigators considered all relevant evidence and concluded that the use of force was consistent with the Montgomery County Sherriff's Office use of force policy and policy ensuring medical aid after the use of force. *See* MC-000111 (p. 23). As proper conduct was found on the part of the officers' involved (Sgt. Snyder), no discipline was issued.

6

Currently pending before this Court is Defendants' Motion for Summary Judgment, arguing, among other things that there no constitutional violation on the basis of alleged excessive force or deliberate indifference to a serious medical need can be established, that the individual officers are entitled to qualified immunity, and that Plaintiff cannot establish a *Monell* claim as there is no evidence of a pattern and practice of misconduct.[1] *See* Doc. No. 123.

### III.  LAW AND ARGUMENT SUPPORTING BIFURCATION

#### A.  Standard for Motion to Bifurcate

In accordance with Fed.R.C.P. 42(b), Separate Trials, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims…" Fed.R.C.P. 42(b). The Sixth Circuit has provided that the decision to try issues separately "is within the sound discretion of the court." *Yung v. Raymark Indus., Inc.*, 789 F.2d 397, 400 (6th Cir. 1986), citing *Helminski v. Ayerst Lab., Div. of American Home Prod. Corp.,* 766 F.2d 208, 212 (6th Cir.), *cert. denied*, 474 U.S. 981 (1985); *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir. 1982). In resolving the propriety of separate trials "the court should consider several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007)(quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). Rule 42(b) supports bifurcation in this case as it specifically identifies the "avoidance of prejudice" as a reason for the court to order a separate trial, which risk is high in the case. Sixth Circuit case law similarly similarly delineates facts such as "potential prejudice to the parties" and "possible confusion of the jurors" as key considerations in a bifurcation determination. *Wilson*, 477 F.3d at 339.

---

[1] Defendants also argue that the "official capacity" claims must be dismissed and Sheriff Plummer is not liable for any action taken in his personal capacity.

### A. *Monell* bifurcation in the Sixth Circuit

Not surprisingly, the federal courts in general, largely favor bifurcation in civil rights cases involving *Monell* claims. This is also true of the Sixth Circuit. In the two times it has directly addressed this issue, the Sixth Circuit has specifically indicated its approval of the separate trial of *Monell* issues by affirming the district courts' decisions to bifurcate the respective trials. *See Wilson,* 477 F.3d at 340 and *Tinch v. City of Dayton*, 1996 U.S. App. LEXIS 5716 (6th Cir. 1996) (nonprecedential). In *Wilson*, the plaintiff moved to bifurcate the second trial (following a mistrial) so that their claims against the county would be tried first. The Sixth Circuit found no abuse of discretion by the magistrate judge which agreed to bifurcation but concluded that the claims against the individual officers should be tried first in light of *Monell*. 477 F.3d at 331 (6th Cir. 2007). In *Tinch*, the Sixth Circuit held that the district court did not abuse its discretion by bifurcating the trial as to the separate defendants - the defendant officers and the municipal defendants against whom a *Monell* claim was asserted. The court reasoned that "a finding that [plaintiff] suffered an actual violation of his constitutional rights at the hands of the defendant officers acting under color of state law was a necessary prerequisite to a finding of liability against the municipal defendants", and that "[a] city or state's policies, standing alone, do not give rise to a § 1983 action." 1996 U.S. App. LEXIS 5716, at *12-13.

At the district court level, in the Southern District, the Honorable Walter H. Rice has consistently bifurcated *Monell* claims at trial. *See Wells v. City of Dayton*, 495 F. Supp. 2d 793 (S.D. Ohio 2006)(concluding that separate trials of the claims against the individual defendants and the *Monell* claim against the city were necessary in order to avoid prejudice). Judge Rice astutely reasoned in *Wells* that if a single trial was conducted:

> …evidence offered against Dayton regarding incidents of alleged misconduct by police officers, unrelated to the incident in question in this case but relevant to the question of municipal liability for a

8

> <u>policy or practice, would be highly prejudicial to Cornwell and McCall.</u> The questions regarding the liability of those individual Defendants must be decided by the jury only on the facts of the particular encounter on which this case is based. That is to say, these individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer, when defending against the allegations of the Plaintiffs as to the incidents that occurred in this case. A jury must be allowed to consider the evidence regarding this incident, with its focus on that evidence, unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times, evidence that has relevance only to the Plaintiffs' claims of Monell liability against Dayton.

*Wells*, 495 F. Supp. 2d at 795[2] ; *see also Brunson v. City of Dayton*, 163 F. Supp. 2d 919 (S.D. Ohio 2001); *Kelly v. Ward*, 1994 U.S. Dist. LEXIS 21511 (S.D. Ohio 1994) and *Bell v. City of Miamisburg*, 1992 U.S. Dist. LEXIS 22764 (S.D. Ohio 1992). Judge Rice's reasoning has been adopted by the Honorable Timothy S. Black of the Southern District in *Glowka v. Bemis*, 2015 U.S. Dist. LEXIS 166997, at FN8 (S.D. Ohio 2015)("…had any of the Monell claims survived summary judgment, this Court would have granted Defendants' motion to bifurcate" amd finding Judge Rice's "observations and holding in *Wells[]* granting bifurcation of *Monell* claims from § 1983 claims against individual police officers, to be instructive and applicable here..").[3]

---

[2] Judge Rice also suggested that the outcome of the first trial against the individual defendants likely would moot the need for a second trial, as "a finding that an officer did not deprive the plaintiff of her constitutional rights, Monell liability cannot be imposed upon his governmental employer." 495 F. Supp. 2d at 796, *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir.) (further citations omitted). Even if a verdict was returned for the plaintiff, the City might agreed to indemnify the individual defendants there would be no need for a second trial to resolve the *Monell* claim since plaintiffs are only entitled to one recovery. Also, a second trial was unlikely to be required because in the Judge's experience the possibility was remote that the jury will find both that the individual defendants violated plaintiff's rights and were entitled to qualified immunity. *Id.*

[3] Although the Fed.R.C.P. 42 specifically contemplates bifurcation under Rule 42(b), *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626 (S.D. Ohio) took a different approach by relying upon a <u>non</u>-*Monell* case, *In re Beverly Hills Fire Litigation*, 695 F.2d at 217 (6th Cir. 1982), where the Sixth Circuit denied bifurcation, reasoning that "bifurcation may deprive plaintiffs of their

Further supporting bifurcation is the recent ruling of the United States District Court for the Southern District of Ohio, Western Division r in *Wade v. Montgomery Cty.*, 2018 U.S. Dist. LEXIS 204679 (W.D. 2018) where the court had granted summary judgment to the individual defendant officers for claims stemming from their alleged conduct in securing plaintiff him to a restraining chair and then pepper spraying him while restrained, and allowed the *Monell* liability stemming from this decision to go forward.

### B. Defendants have met the standard for separate trials set forth in Fed.R.C.P. 42(b).

Defendants have established the grounds for separate trials of the § 1983 civils rights claims for excessive force and deliberate indifference to a serious medical need, and the *Monell* claim, as set forth in Fed.R.C.P. 42(b). Defendants have shown that a single trial would result in "convenience, [] avoid prejudice" and would "expedite and economize" this matter. Fed.R.C.P. 42(b). Bifurcation of this matter is solidly supported by the Sixth Circuit's decisions in *Wilson* and *Tinch*, and Judge Rice's reasoning in *Wells*, 495 F. Supp. 2d 793, is particularly compelling and relevant here.[4]

---

legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere." 385 F. Supp. 2d 626. However, the Sixth Circuit did not cite *Beverly Hills* in the two *Monell* cases in its affirmed bifurcation based on *Monell* (*Wilson* and *Tinch*) did because it does not apply to to this issue.

[4] While there are also other cases in which district courts in this Circuit have both refused and agreed to bifurcate *Monell* cases at the discovery phase, these are inapplicable as bifurcation of a jury trial is a different procedural issue entirely. *Kozma v. City of Livonia*, 2014 U.S. Dist. LEXIS 111930 (E.D. MI 2014) supports bifurcation, but *Marcum v. Scioto County*, 2012 U.S. Dist. LEXIS 93042, 2012 WL 2674303 (S.D. Ohio 2012); *Duggan v. Vill. of New Albany*, 2009 U.S. Dist. LEXIS 117206 (S.D. Ohio 2009)(district court deferred ruling on bifurcation of trial until after discovery) are not as supportive.

      **1.**      **Plaintiff's § 1983 claims against the individual Defendants is are based upon evidence of those individuals' conduct with regard to Mr. Guglielmo only, unlike his *Monell* claims**

Mr. Guglielmo's §1983 excessive force claim is brought pursuant to the Fourteenth Amendment's Due Process Clause, which protects a pretrial detainee from the use of excessive force that amounts to punishment. *Leary v. Livingston Co.*, 528 F.3d 438, 443 (6th Cir. 2007). To establish an excessive force claim, the plaintiff must must show "that the force purposely or knowingly used against him was objectively unreasonable." *See Hopper v. Plummer*, 887 F. 3d 744. 752 (6th Cir. 2018).  Should these claims proceed to trial, the jury will be charged with determining "that the force purposely or knowingly used against [the plaintiff] was objectively unreasonable." *See Hopper*, 887 F. 3d at 752.  The jury would also examine whether there would be reason for the non-intervening officers to know that that unconstitutional force was being used and whether Sgt. Snyder was protecting himself with a reasonable use of force, or for them to intervene, and whether such a  short encounter would not have allowed any of the observing officers to intervene in the use of force even if they knew that it would continue beyond one punch. *See Amerson v. Waterford Tp.*, 562 Fed. Appx. 484 (6th Cir. 2014) (holding that inactive officer was not liable for kicking and punching injuries to suspect); *Carter v. Carter*, 2018 U.S. App; LEXIS 6393 at *9 (March 15, 2018) (significance of brevity of the alleged period of excessive force); *see also Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997) (regarding lack of obligation when officer does not perceive a violation of civil rights).[5] Plaintiff also alleges that Sgt. Snyder intentionally made Mr. Guglielmo angry by calling him a faggot, however a constitutional violation also cannot be based alone upon the alleged derogatory terms which Mr. Guglielmo claims that Sgt. Snyder used.[6]

---

[5] Of course, the individual Defendants cannot be held liable even if a constitutional violation is found if they meet the requites for qualified immunity as they have argued on summary

Plaintiff further alleges a claim for an unconstitutional denial of medical care and deliberate indifference to a serious medical need, in the nature of a 15 minute delay in securing a nurse after the purported unconstitutional use of force.[7] To sustain this claim the Plaintiff must establish the objective component, the existence of a "sufficiently serious" medical need on the part of Mr. Guglielmo, and the subjective component, that these particular Defendants knew about the serious medical need and purposefully ignored it. *See Framer v. Brennan*, 511 U.S. 825, 834 (1994).[8]

---

judgment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (providing that government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Pearson v. Callahan,* 555 U.S. 223 (2009) (where no constitutional right was violated "there is no necessity for further inquiries concerning qualified immunity.").

[6] As a brief overview, Defendants maintain among other things that that the use of force by Sgt. Snyder was not excessive. Defendants also contend that that there would be no reason for the non-intervening officers to know that that unconstitutional force was being used or for them to intervene. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)(an officer who has not been alleged to have actually exerted force can only be found liable if he had reason to know that excessive force would be or was being used, and had both the opportunity and the means to prevent that harm). from occurring. In addition, officers' use of verbal threats, racial epithets, or slurs do not transform a claim into one for excessive force. *See Williams v. Sandel*, 433 Fed. Appx. 353 (6th Cir. 2011).

[7] Defendants also assert that neither component of a claim for an unconstitutional denial of medical care claim can be satisfied, as Plaintiff is unable to establish the objective component, the existence of a "sufficiently serious" medical need, or the subjective component by showing that the defendant knew about the serious medical need and purposefully ignored it. *Framer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) As Mr. Guglielmo continued to stand and pound on the door even though he experienced some swelling and nose bleeding after the purported use of force, there is no reason Sgt. Snyder/Defendants should have been aware that he had a senior medical need requiring immediate medical assistance, and medical assistance was provided. *See* Snyder Dep., Doc. No 107, at PID 2180.

[8] In addition, Mr. Guglielmo's condition was not so obvious to waive the necessity of the plaintiff presenting verifying medical evidence that even after receiving the allegedly delayed treatment, his medical condition worsened or deteriorated. *See Blackmore v. Kalamazoo County*, 390 F. 3d 890, 899 96th Cir. 2004) (citing standard when verifying medical evidence is needed).

12

As such, and based upon the elements of Plaintiff's underlying claims against the individual Defendant officers, the relevant evidence is limited to evidence of those Defendant officers' respective conduct with regard to the Plaintiff, Mr. Guglielmo for the time period in question, and which gives rise to his claims.

In contrast, Plaintiff's *Monell* claim rests on evidence of a <u>pattern of conduct by the County</u>, which could include evidence involving other unrelated incidents and individuals, thus is irrelevant to the § 1983 claims against the individual Defendants. In his *Monell* claim, Mr. Guglielmo sues Sheriff Plummer and the Montgomery County Board of County Commissioners, alleging failure to train or supervise the other Defendants. The *Monell* claim is based upon Plaintiff's assertion that Montgomery County has a practice of allowing officers to use unreasonable force, then ratifying that conduct through an inadequate investigation, and failed to meaningfully investigate the incident here by failing to interview critical witnesses whom the Plaintiff identifies. *See* Doc. No. 134, at PID 4655-4656. The facts upon which the *Monell* claim is based are therefore <u>not</u> pertinent or relevant to the underlying claims against the individual Defendant officers, because their liability under § 1983 in this case rests upon their own specific conduct, with regard to Mr. Guglielmo, during the relevant period.

Plaintiff's Response to Defendants' summary judgment motion describes the evidence he asserts in support of his *Monell* claim. He repeatedly refers to Montgomery County's conduct with regard to "its officers" and "investigations" - <u>not</u> the individual officers here or the incident involving Mr. Guglielmo. *See* Doc. No, 134, pp. 4-51. Rather, Plaintiff cites to evidence of the County's purported conduct with regard to unrelated incidents and investigations of excessive force against unrelated persons including persons identified as "Hopper," "Wallace," "Jones" and "Middlebrook." *See* Doc. No. 134, pp. 54, 57-58.

Plaintiff describes his *Monell* evidence as including the opinion of his corrections expert Michael Berg, that Montgomery County's custom of allowing other [unidentified and unrelated] officers to use excessive force in their jail is "shown by the history of the Defendant Officers' uses of force, and the lack of consequences they faced. *See* Doc. No. 134, pp. 55-56. This is incorrect as only Defendant Sgt. Snyder is charged with use of force by Mr. Guglielmo. Plaintiff relates that Mr. Berg "reviewed 120 uses of force by the named defendants in this case to determine whether any force used was excessive." *See* Doc. No. 134, p. 56, citing Berg Dep. Plaintiff relates that "Mr. Berg opined that the overall number of use of force incidents by the defendant officers was 'extremely high.'" *See* Doc. No. 134, p. 57. Again, none of the Defendant officers except for Defendant Sgt. Snyder has been accused by Mr. Guglielmo of using force. Plaintiff further states, that "[o]f the 120 uses of force in the jail he reviewed, Mr. Berg determined that 71 involved excessive force." *See* Doc. No. 134, p. 57. (Ex. Berg A, Berg Report, p. 29).[9] Plaintiff also refers to evidence regarding unrelated and different types use of force incidents, stating that "Mr. Berg elaborated on six exemplar use of force incidents used as exhibits in the depositions." *See* Doc. No. 134, pp. 57-58, citing Berg Dep and Ex. 27, Jones Incident Report; Ex. 28, Jones UoF Report; Berg Dep. and Ex. 26 Middlebrook UoF Report. As Plaintiff states:

> "Mr. Berg elaborated on six exemplar use of force incidents used as exhibits in the depositions. One involved an inmate who was 'taken to the ground, punched, and pepper sprayed because he refused to take his hands out of the pockets of his jail uniform and put on a suicide gown.' (Id. at p. 30; Ex. 27, **Jones Incident Report**; Ex. 28, Jones UoF Report). This inmate was assaulted for being suicidal. *Id.*, pp. 57-58.

---

[9] Plaintiff refers to Mr. Berg's opinion that "Sgt. Snyder used force 31 times in only one and a half years in the jail…Of those incidents, 29 involved excessive force, or 93.5%.", which of course is irrelevant to the non-intervening individual Defendant officers. *See* Doc. No. 134, p. 57.

14

> "Another incident involved an inmate who was slammed against the wall, taken to the ground, and pepper sprayed because he refused to remove his hood during booking. (Id.; Ex. 26 **Middlebrook UoF Report**). Neither inmate tried to harm anyone, yet they were brutally assaulted. No officer was disciplined in those two uses of force, nor any of the other 120. (Id.)."

*See* Doc. No. 134, pp. 57-58. In this case, of course, no pepper spray was involved and the facts are markedly different from those involving Jones and Middlebrook.

Regarding his intention to present evidence that Montgomery County was on notice that excessive force was being used in the jail, Plaintiff states: "[e]ach of the excessive use of force incidents identified by Mr. Berg were reported to the Chief Deputy, Jail Commander, and the Training Center. *See* Doc. No. 134, p. 58, citing Berg Dep and Report p. 29. Plaintiff also described purported evidence that "Sheriff Plummer approved all uses of excessive force in the jail." Doc. No. 134, p. 58 (lowercase substituted). Finally, Plaintiff refers to evidence that "Montgomery County had four opportunities to prevent this incident from happening by disciplining Sgt. Snyder for using excessive force on other inmates in nearly identical situations." Doc. No. 134, p. 59.

The only conceivable reason Plaintiff could have for trying injecting this evidence into this case is to attempt to support a *Monell* claim, and separate trials are needed.

### C. Defendants have satisfied the Fed.R.C.P. 42 factors for separate trials of the § 1983 individual claims and the *Monell* claim

Fed.R.C.P. 42(b) allows a court to grant a separate trial of issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed.R.C.P. 42(b). Defendants have satisfied all of these factors here.

First, as to prejudice, a single trial will result in unfair, excessive and irreparable prejudice to the Defendants. Without bifurcation the jury will be exposed to a deluge of evidence pertinent only to the *Monell* claim and which is grossly prejudicial as to the individual

15

officers' defense of the § 1983 claims. The liability of the individual Defendants must be decided based upon the facts of each of the Defendant officer's encounters with Mr. Guglielmo only. The non-intervening defendants are not accused of using force on Mr. Guglielmo in this case, and evidence concerning unrelated incidents and individuals is also irrelevant and prejudicial to Sgt. Snyder who was not involved in every unrelated incident that Plaintiff's expert identifies. That evidence is also irrelevant as to what precisely happened with regard to Mr. Guglielmo. Should the jury be exposed to evidence purporting to show alleged serial misconduct of other past or present Montgomery County corrections officers in unrelated incidents involving unrelated inmates, the jury will be inevitably and overwhelmingly biased and prejudiced against the individual Defendant corrections officers here. Bifurcation is therefore needed to avoid the danger of excessive, unfair, and irreparable prejudice to the individual Defendants (and particularly those non-intervening officers).

If Plaintiff is unable to establish a constitutional violation by the Defendant individual officers (either before this Court on summary judgment or by a jury), the *Monell* claim against the County would be moot, and the need for a second trial obviated in which case the jury need never hear the prejudicial single-purpose evidence as part of the case against the individual defendants.

Second, a single trial will confuse the jury and the issues in this factually complex matter. The facts here are complicated enough given the multiple sequential episodes of Mr. Guglielmo's conduct beginning at the homeless shelter, his agitation and encounters with multiple officers, medical personnel and other individuals before his detention at the jail, and the series of events after he booked, situated in a cell in the general population and was moved to the

Transport Area.[10] The "thread" of Mr. Guglielmo's underlying civil rights claims against the named Defendants will be completely lost in the cacophony of evidence of other unrelated incidents of alleged excessive force which Plaintiff will seek to introduce. Each of the other unrelated "excessive force" incidents and investigations involve "stories within stories," and the jury would be easily become sidetracked and confounded.

Third, bifurcation will promote the goals of convenience and judicial economy. Bifurcation would allow the case against the individual officers to proceed first. There can be no *Monell* liability unless there is first a finding that the Defendants violated Plaintiff's constitutional rights. If Plaintiff is unable to establish a constitutional violation by the individual officers, the *Monell* claim against the County would be moot, and there will be no need for a second trial, preventing a significant waste of judicial resources and avoiding a situation where the jury and this court need listen to Plaintiff's copious *Monell* evidence. It is more practical and efficient to address the underlying § 1983 claims first with evidence pertaining only to those claims.

Also, due to the number of Defendants and numerous witnesses, a single trial which also addresses the *Monell* claims would be unduly lengthy and unwieldly. The *Monell* claims involve distinct and separate issues which require evidence on Montgomery County's policies and procedures, and evidence involving not only the investigation of Mr. Guglielmo's circumstances but other investigations involving unrelated matters pursuant to which Plaintiff hopes to establish abuse by the County. As described above, Plaintiff's intent is to present a significant amount of evidence on the *Monell* issue. In fact, Plaintiff's description of his *Monell* evidence alone,

---

[10] The factual complexity of this matter is shown, for example, by Defendants' necessarily detailed description. which runs from pages 1-32 (even excluding the later investigation). *See* Doc. No. 123, pp. 1-32.

17

stretches from pp. 49-60 of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. *See* Doc. No. 134, pp. 49-60.

The Plaintiff's claims against the individual defendant officers should not be intertwined in a single trial with Plaintiff's *Monell* accusations against the Montgomery County for its purported approval of a pattern and practice of using unreasonable force against jail inmates. The § 1983 claims against the officers should be bifurcated from the *Monell* claims and tried first In the event that the jury finds no constitutional violation the case will be over. Should the jury find a constitutional violation, the case can proceed to the *Monell* portion of the trial, at which time the Plaintiff will have the opportunity for the jury to hear the evidence relevant only to that discreet claim. Defendants have met the requisites of Fed.R.C.P. 42(b) and trial of the two claims should be bifurcated.

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court to sustain their Motion to Bifurcate, and order that if summary judgment is not granted to some or all of the Defendants, then the case will first proceed to a trial on the underlying civil rights and state law claims against the individual Defendants remaining after the summary judgment motion is decided. If, the jury finds a constitutional violation in the first phase of the trial, the case shall proceed to a second phase, in which evidence is presented to the jury as to whatever *Monell* claims, if any remain after resolution of the summary judgment motions.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

*/s/ David E. Williamson*
DAVID E. WILLIAMSON (0071270)
312 Elm Street, Suite 1850
Cincinnati, OH  45202
Phone:  (513) 372-6816
Fax:  (513) 372-6801
Email:  dewilliamson@mdwcg.com

PAUL D. KREPPS (Admitted Pro Hac Vice)
ESTELLE K. MCGRATH (Admitted Pro Hac Vice)
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA  15219
Phone: (412) 803-1140
Email:  pdkrepps@mdwcg.com
          ekmcgrath@mdwcg.com

JILLIAN L. DINEHART (0086993)
127 Public Square, Suite 3510
Cleveland, Ohio 44114
Phone:  216.912.3800
Email:  kkhansbrough@mdwcg.com
jldinehart@mdwcg.com

*Counsel for Defendants, Montgomery County, Ohio and the Montgomery County Board of Commissioners, Sherriff Phil Plummer, Matthew Snyder, Zachary Zink, Matthew Sears, David Cohn, Brandon Ort, and Benjamin Cooper*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2019, a copy of the foregoing was filed electronically with the Clerk, which will give Notice of such filing to all parties by operation of the Court's CM/ECF system.

*/s/ David E. Williamson*
DAVID E. WILLIAMSON (0071270)

19